SIGNED THIS: November 6, 2018

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 15-71018 |
| JOHN C. BENANTI and | ) | |
| DEBRA M. BENANTI, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |

## O P I N I O N

Before the Court is Marine Bank's Motion for a New Trial/Reconsideration of its order on United Community Bank's objection to the allowance of certain claims of Marine Bank. Because Marine Bank has failed to meet its burden of proving its entitlement to the relief sought, the motion will be denied.

### I. Factual and Procedural Background

Marine Bank has asked the Court to reconsider its Opinion and Order entered April 13, 2018, finding certain claims of Marine Bank to be contingent and

ultimately allowing them but at the estimated value of zero, or to reopen the matter to allow Marine Bank to present evidence that the claims were not contingent at the time of trial and subject to estimation by the Court. The facts relating to the underlying claim objection are set forth in detail in *In re Benanti*, 2018 WL 1801194, at *1 (Bankr. C.D. Ill. Apr. 13, 2018). Accordingly, those facts will only be briefly summarized here.[1]

John and Debra Benanti ("Debtors") are the owners and operators of a local bowling center through their company Benanti King Pin Lanes, LLC ("King Pin Lanes"). Prior to filing their individual Chapter 7 petition, the Debtors guaranteed certain loans made to King Pin Lanes by Marine Bank. At the time the loans were made, John Benanti was the majority member and primary manager of the business. Shortly thereafter, however, he suffered a stroke, and Debra Benanti stepped in as the primary manager and became the controlling member of the business. At the end of 2016, due to tax and accounting issues relating to Mrs. Benanti's takeover of the membership interest of her husband, a $300,000 note was issued to her by King Pin Lanes. Mrs. Benanti testified that she had not received any cash payments related to the note, and she thought that whatever tax and accounting issues caused the note to be issued were resolved.

The Debtors filed their personal bankruptcy case in June 2015. Marine Bank filed proofs of claim based on the Debtors' guaranties of the loans to King Pin Lanes. United Community Bank ("UCB") objected to Marine Bank's proofs of claim, alleging that, as guaranties, the claims were contingent absent default and

---

[1] To the extent the facts summarized herein differ in any way from the facts set forth in the April 13th Opinion, the facts in the Opinion control and are this Court's actual finding of facts. Fed. R. Bankr. P. 7052.

that they should be estimated to have no value. An evidentiary hearing was held on January 30, 2018, and the matter was taken under advisement.

On April 13, 2018, this Court entered its Opinion and Order on UCB's objection to Marine Bank's claims. The Court found that, at the time of the Debtors' bankruptcy petition, King Pin Lanes was in default of its obligations under prepetition loan documents with Marine Bank. Among them was King Pin Lanes' obligation to maintain, as of each fiscal year end, a Debt Service Coverage Ratio ("DSCR")—meaning, in basic terms, a ratio of net income to principal payments on long term debt—of at least 1.25:1. Under the terms of the prepetition loan documents, the $300,000 promissory note in Mrs. Benanti's favor negatively shifted the ratio below the required 1.25:1, triggering a default. Prior to the hearing on the claim objections, however, King Pin Lanes and Marine Bank entered into a First Amended and Restated Business Loan Agreement ("Amended Loan Agreement") wherein Marine Bank agreed to "refrain from exercising its rights and remedies," other than its pursuit of the pending bankruptcy claims, as long as King Pin Lanes complied with the terms of that and any other agreements with Marine Bank, agreed to subordinate any and all debts owed to the Debtors by King Pin Lanes, and maintained $115,000 in cash reserves at all times.

While the Amended Loan Agreement did not express any intention of waiving prepetition defaults, the Court found that the practical effect of the agreement was to bar Marine Bank from exercising its contract rights on the prepetition defaults as long as there were no defaults going forward. Marine Bank's attorney acknowledged as much at trial but offered no evidence of any new defaults based on noncompliance with the DSCR provision. Concluding that the

facts as they existed when deciding the matter—rather than the time of the petition or the filing of the proof of claim or objection—controlled the outcome, the Court ultimately determined that the loans were no longer in default and were therefore contingent despite the prior default. Having so decided, the Court went on to estimate the claims for purposes of allowance and concluded that, absent evidence or authority to the contrary, Marine Bank's claims should be estimated at zero because it was unlikely that King Pin Lanes would be in default in the future.

On April 26, 2018, Marine Bank filed its Motion for a New Trial/Reconsideration based on purportedly new evidence that, at the time of trial, King Pin Lanes was in default of its obligations under the loan documents to maintain a DSCR of at least 1.25:1. According to the motion, on April 17, 2018, Marine Bank received an email from the Debtors' and King Pin Lanes' accountant verifying the company's financials as reported on its 2017 federal income tax returns dated February 8, 2018. Based on this information, Marine Bank determined that the DSCR for the fiscal year ending December 31, 2017, was 1.20:1 rather than the minimum 1.25:1 required under the loan documents. In its motion, Marine Bank contends that this "newly discovered" information is evidence of a default that existed at the time of trial but could not have been obtained prior to trial despite due diligence because it was based on information yet to be prepared by the Debtors, King Pin Lanes, and their accountants.

In its Response to Marine Bank's Motion for a New Trial/Reconsideration ("Response"), UCB argues that there is no evidence of any effort on the part of Marine Bank to obtain the financial information necessary to calculate the DSCR

for 2017 prior to March 20, 2018, when one of its representatives emailed the Debtors' accountant regarding such information. Although it acknowledges that calculating the DSCR is dependent on end-of-year financials, some of which come from income tax returns, UCB contends that the Debtors' accountants could have prioritized assembling King Pin Lanes' financials and furnished them to Marine Bank prior to the January 30th trial had a request been made. UCB argues that Marine Bank's failure to either ask for the information prior to trial or seek to continue the trial date until it could be obtained shows a lack of due diligence. Due diligence aside, UCB also contends that Marine Bank's motion relies on the notion that the evidence was not available at the time of trial because it did not then exist and that Marine Bank is not entitled to relief based on evidence that did not exist at the time of trial.

Marine Bank filed a Reply to UCB's Response ("Reply") arguing that UCB places too much weight on the nature of the evidence and due diligence when, based on the equities of the case, what really matters is whether the new evidence would have led to a different outcome. UCB then filed a Surreply to Marine Bank's Reply, largely reiterating the arguments set forth in its Response. Both parties also filed a number of exhibits, which they incorporated into their pleadings, including affidavits of Marine Bank employees, deposition testimony of the Debtors' accountant, emails, and financial documents.

The matter was taken under advisement and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C.

§1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of the estate, the allowance of claims against the estate, and the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (B), (O). This matter arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

*A. Relief Under Federal Rule of Civil Procedure 59*

In its Motion for a New Trial/Reconsideration, Marine Bank's only citation to legal authority is its reference to Federal Rule of Civil Procedure 59, noting its applicability to the pending matter through Federal Rule of Bankruptcy Procedure 9023. And while Marine Bank does not cite any specific subsection under which it seeks relief, the motion clearly seeks to amend or reopen the judgment based on "newly discovered evidence." However construed, all of the grounds for relief under Rule 59 are essentially the same—to correct manifest errors of law or fact or to present newly discovered evidence. *See In re Greene*, 2013 WL 1724924, at *2, *11, *13 (Bankr. E.D. Va. Apr. 22, 2013); *U.S. Labor Party v. Oremus*, 619 F.2d 683, 687 (7th Cir. 1980) ("A Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law.").

Rule 59 itself provides little insight into the standard by which "newly

discovered evidence" should be evaluated, but the majority of courts look to Federal Rule of Civil Procedure 60(b)(2), which provides for relief from judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2); *Peacock v. Board of School Commissioners of the City of Indianapolis*, 721 F.2d 210, 213-14 (7th Cir. 1983). As such, cases regarding newly discovered evidence decided under both Rule 59 or 60 are instructive.

In the context of a motion to amend or alter a judgment under Rule 59(e), the Seventh Circuit has stated:

> To succeed on a motion under Rule 59 [by invoking newly discovered evidence], a party must show that: (1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result.

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013) (alteration in original) (citations omitted); *see also U.S. v. Walus*, 616 F.2d 283, 287-88 (7th Cir. 1980) (applying the same standards to motion under Rule 60(b)(2) based on newly discovered evidence).

Several of the requirements for Marine Bank's motion can be readily addressed. Without specifically deciding whether the new evidence offered by Marine Bank would, in fact, have led to a different result, the Court agrees with Marine Bank, and UCB does not seem to dispute, that evidence of noncompliance with the DSCR requirements after the Amended Loan Agreement was executed

likely would have impacted the Court's decision.[2] Much of the trial on the claim objections focused on whether or not there was an existing default under the loan documents. And the Court's finding of no default was based, in large part, on its conclusion that the Amended Loan Agreement resolved all then-existing defaults. As the Court stated, "[u]nless there has been a new default [after the Amended Loan Agreement], Marine Bank's guarantee claims must be deemed contingent." *Benanti*, 2018 WL 1801194, at *8. Evidence of King Pin Lanes' failure to meet the minimum DSCR at the end of 2017 might have been evidence of a new default not resolved by the Amended Loan Agreement executed at the beginning of 2017 that could have changed the outcome.[3] Nevertheless, the Court can say that if the evidence had been presented, it would have been relevant, material, and not cumulative.

The real issue, however, is whether the circumstances surrounding the discovery of the new evidence are such that warrant reopening the judgment. Much of the parties' disagreement on this front centers around Marine Bank's diligence—or lack thereof—in obtaining the financial information necessary to determine the DSCR for 2017. But "diligence is an issue only if there is evidence to be unearthed." *Peacock*, 721 F.2d at 214.

"A critical requirement under Rule 59 is that the 'newly discovered evidence'

---

[2] For its part, UCB has never conceded the existence of a default for noncompliance with the DSCR provision in 2017, but it has also never refuted the assertion.

[3] Of course, the issue of whether the alleged new default in the DSCR was resolved by the Amended Loan Agreement might be a disputed issue. The affirmative covenant in the Amended Loan Agreement provided for subordination not only of the $300,000 note issued to Mrs. Benanti for 2016 but also any other indebtedness King Pin Lanes might owe to John or Debra Benanti "whether now or later incurred."

not be in fact 'newly created evidence[.]'" *Greene*, 2013 WL 1724924, at *20 (citing *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006)). To allow the reopening of a case because of after-occurring events would be to open the door to unending litigation and the erosion of "bedrock principles of finality and certainty of judicial proceedings." *Id.*

UCB's argument that there was no evidence to discover can be swiftly rejected. As Marine Bank correctly points out, the issue here is whether a default existed in the DSCR on December 31, 2017. Neither party points to any transaction that occurred after the end of 2017 or after the trial on January 30, 2018, that impacted the calculation of the DSCR. Rather, what remained to be done after December 31, 2017, was the year-end accounting of King Pin Lanes and the calculation of the DSCR. The information necessary to do the accounting and complete the calculations was all available at the 2017 year-end and before the trial and was therefore in existence. The fact that the information had not been put into a meaningful format or communicated to Marine Bank before the trial does not make the information non-existent. UCB's argument in that regard cannot be sustained.

Because the information existed at the time of trial, Marine Bank bears the burden to show that the alleged 2017 violation of the DSCR covenant was "newly discovered or unknown to it until after the [trial]" and "that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the [claim objection]." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)); *see also In re*

*Morningstar*, 433 B.R. 714, 718 (Bankr. N.D. Ind. 2010) ("To prevail under Rule 60(b)(2) one must demonstrate not just that new evidence has been discovered which might alter the result, but also that the new evidence could not 'with reasonable diligence' have been discovered earlier."). As the Seventh Circuit has consistently held, "newly discovered" evidence means not only that the evidence was not discovered in time for trial or before judgment was entered but also that the evidence could not and should not have been discovered and presented prior to entry of a final judgment. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Mumford v. Bowen*, 814 F.2d 328, 330 (7th Cir. 1986).

To demonstrate due diligence, the moving party has the burden of "provid[ing] the court with information concerning its efforts to obtain the [evidence] required: what was done, by whom, when and with what result." *Morningstar*, 433 B.R. at 718. Marine Bank has failed to demonstrate that it exercised any diligence to obtain the information it needed to calculate King Pin Lanes' DSCR for 2017 prior to trial. Instead, it merely argues that it had no legal right to demand such information and whatever delay occurred was Mrs. Benanti's and her accountant's fault and not its own. As the court in *Morningstar* stated, "[t]hat is not enough." *Morningstar*, 433 B.R. at 718. Indeed, greater efforts have proved insufficient. *See Allen v. Johnson*, 2015 WL 3648623, at *4 (M.D. La. June 10, 2015) (failing to seek a continuance or take any action other than trying to contact witnesses by telephone who the moving party later argued were important to the case was treated as a lack of due diligence).

Marine Bank's bald assertion that the evidence "was not discovered until after the trial[,]" leaving the inference to be drawn that it therefore had no reason

to know it would be relevant, is tenuous at best. As discussed, the DSCR was calculated in the same manner after each fiscal year end. As such, at the very least, Marine Bank would have known that the DSCR for the 2017 fiscal year could be calculated in early 2018. Yet Marine Bank took no action to either obtain the information in advance of trial or to bring the situation to the Court's attention. Such claims of ignorance, without more, are insufficient. *See, e.g.*, *Cincinnati Life Ins. Co.*, 722 F.3d at 955-56 (court dismissed moving party's claim of ignorance about deposition testimony in separate lawsuit because, while she had been previously excused from the lawsuit, which involved the same parties, she "was certainly aware that issues related to her interests were being litigated and had the opportunity to inquire about relevant testimony long before" judgment was entered).

The 2016 DSCR default was one of several defaults alleged by Marine Bank at trial. Marine Bank had to know that there could be a repeat of that default in 2017 and could have discovered the likelihood of the additional default before trial. Its suggestion that the loan documents required King Pin Lanes to provide the information within 30 days after the year end and therefore left it without any ability to get the information in time for trial is simply not true. Because of the pendency of the contested claim objection, Marine Bank had a variety of discovery options available. But it apparently issued no subpoenas and took no depositions regarding the likelihood of continuing defaults in the DSCR. And it never asked for a continuance of the trial so that the accounting information could be prepared after the end of 2017. In short, Marine Bank did absolutely nothing to discover what it now alleges is new evidence even though it was fully aware before trial that

the issue of a further default in 2017 could be relevant.[4]

Because Marine Bank took no action relating to the information needed to produce evidence of the 2017 DSCR until several weeks after the trial was held and, even then, did not raise the issue with the Court until after an unfavorable judgment was entered, it has not demonstrated its entitlement to relief under Rule 59 or 60. On that basis, Marine Bank's Motion for New Trial/Reconsideration must be denied.

### B. Relief Under §502(j)

In its Reply, Marine Bank cites—for the first time—§502(j) as providing an alternate basis for relief. Section 502(j) states that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. §502(j). And "[a] reconsidered claim may be allowed or disallowed according to the equities of the case." *Id.* Reconsideration under §502(j) is therefore a two-step process; the first step being to determine whether "cause" for reconsideration has been shown. *In re Rayborn*, 307 B.R. 710, 720 (Bankr. S.D. Ala. 2002). Once "cause" has been shown, "the Court decides whether the 'equities of the case' dictate allowance or disallowance of the claim." *Id.*

"Neither the Bankruptcy Code nor the rules of procedure define 'cause' for the reconsideration of a claim [under §502(j)]." *Morningstar*, 433 B.R. at 717. While

---

[4] Marine Bank's argument that, because Mrs. Benanti's accountants were slow to respond to the Bank's request for accounting information made after the trial, the Court should assume that they would not have timely complied with requests for information in January 2018 is also without merit. There is no suggestion that any urgency in responding was communicated by the Bank to the accountants. And, in any event, if Marine Bank had issued proper discovery requests or process to the accountants or Mrs. Benanti before trial, timely compliance could have been compelled.

different standards have arisen, the most common approach, and the one adopted by the Seventh Circuit, is that found in Federal Rule of Civil Procedure 60(b), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9024. *Morningstar*, 433 B.R. at 717-18 (citing *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994); *In re Gluth Bros. Const., Inc.*, 426 B.R. 771 (Bankr. N.D. Ill. 2010); *In re Airadigm Communications, Inc.*, 376 B.R. 903 (Bankr. W.D. Wis. 2007); *In re Xpedior, Inc.*, 354 B.R. 210 (Bankr. N.D. Ill. 2006); *In re Watkins*, 240 B.R. 735, 739 (Bankr. C.D. Ill. 1999)); *see also In re Williams*, 276 B.R. 899, 906-07 (C.D. Ill. 1999). Still, a minority of courts, including some in this circuit, have followed other approaches. Some use a multi-factor analysis that takes into account the moving party's good faith, the extent of the delay in seeking reconsideration, and the consequences thereof. *Morningstar*, 433 B.R. at 717 (citing *In re Van Dyke*, 286 B.R. 858, 860-61 (Bankr. C.D. Ill. 2001)). Others have followed an approach based on the "totality of the circumstances," considering "any relevant factor." *Id.* (citing *In re Willoughby*, 324 B.R. 66, 73-74 (Bankr. S.D. Ind. 2005)).

Interestingly, many of the cases following the minority approaches involve situations where the merits of the claim were not actually litigated. *See In re Filarski*, 2012 WL 6212853, at *1 (Bankr. S.D. Ill. Dec. 13, 2012); *Van Dyke*, 286 B.R. at 860-61. The Fifth Circuit has held that drawing such a distinction is consistent with Bankruptcy Rule 9024, which excepts "the reconsideration of an order allowing or disallowing a claim against the estate entered without contest" from the time limitations of Rule 60(c), concluding that, if a claim has actually been litigated, reconsideration is subject to Rule 60 standards. *In re Colley*, 814

F.2d 1008, 1010 (5th Cir. 1988). Here, UCB's claim objection was litigated. And, in any event, the Seventh Circuit has clearly held that "cause" for reconsidering orders allowing or disallowing claims is governed by the standards set forth in Rule 60(b).

As discussed above, Marine Bank failed to demonstrate that it exercised due diligence in obtaining the claimed new evidence prior to a judgment being entered. It therefore did not meet its burden under Rule 60(b), seemingly making its argument for relief under §502(j) moot. Because the standards for evaluating a request to reconsider under §502(j) are the same as a motion under Rule 60(b), reliance on §502(j) at this point adds no support to Marine Bank's position. But, in making the argument, Marine Bank does raise some additional points that will be briefly addressed.

The thrust of Marine Bank's §502(j) argument is that the equities of the case demand reconsideration. Specifically, Marine Bank contends that, because the Court has such broad discretion in reconsidering claims, the only question that matters is whether the evidence would have changed the outcome of the case. But the argument puts the cart before the proverbial horse. Whatever discretion the Court has, it is still bound by applicable law.

Before the Court can "evaluate whether 'the equities of the case' warrant allowing or disallowing a claim (the second sentence of §502(j)), it first must find that there is 'cause' to reconsider the claim (the first sentence of §502(j))." *Morningstar*, 433 B.R. at 719. And, as stated, the majority view as adopted by the Seventh Circuit is that the standard for determining "cause" is similar to the requirements for relief under Rule 60. In addition to showing that the new

evidence likely would have impacted the Court's decision, Marine Bank must demonstrate that the evidence is, in fact, "newly discovered" and that it exercised due diligence in obtaining the evidence and bringing it to the Court's attention. Under Rule 60(b)(2), there is no exception for "conclusive" evidence. *Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.*, 69 F.3d 1312, 1315 (7th Cir. 1995). Before the Court can consider the evidence, due diligence in discovering the evidence must be shown. Here, no diligence whatsoever was shown.

In urging the Court to reconsider its claims based on new evidence that King Pin Lanes was in default of its loans at the time of trial, Marine Bank cites the Court's comment in the Opinion that "if a claim were contingent and liability became fixed after the petition date, the claimant would have cause to have the claim reconsidered." *Benanti*, 2018 WL 1801194, at *7. As Marine Bank points out, this statement was made with reference to *In re Kreisler*, 407 B.R. 321, 328 (Bankr. N.D. Ill. 2009), wherein the bankruptcy court opined that the holder of a disallowed claim was not without recourse if a default occurs. But Marine Bank's reliance on this Court's statement is problematic when viewed in the context of the underlying discussion.

The statement cited by Marine Bank was intended to illustrate the Court's rationale for considering all facts and circumstances as they existed at the time of determining whether Marine Bank's claim was contingent rather than as of the Debtors' petition date. The issue of reconsideration under §502(j) was not before the Court. Rather, the Court was explaining why it considered post-petition developments in deciding the issues before it. The sentence immediately following

the language cited by Marine Bank states that "[i]t would be nonsensical for the Court to ignore the fact that a claim may or may not be contingent when deciding the matter, only to reconsider the claim on that basis immediately thereafter." *Benanti*, 2018 WL 1801194, at *7. Doing so would open the door to endless litigation. For the Court to reconsider its judgment because it was not presented with all the relevant facts that existed at the time—without any showing of unavailability or due diligence—would be to encourage litigants to proceed on one body of evidence or theory of the case while holding out hope that they might get a second bite at the apple under an alternate theory or set of facts if their initial efforts are unsuccessful. Rewarding such a practice would be unwise. Reconsideration under §502(j) must be denied.

### IV. Conclusion

The integrity of the judicial process relies on adherence to fundamental concepts, including finality and certainty in litigation. It is through this lens that requests to disturb a judgment must be evaluated. And the party seeking relief from judgment must meet certain standards for relief. In the Seventh Circuit, the standard for relief based on "newly discovered evidence," whether proceeding under Federal Rule of Civil Procedure 59 or 60 or §502(j) of the Bankruptcy Code, requires showing that the evidence could not have been obtained even with some degree of diligence prior to the judgment being entered. Marine Bank failed to establish that it exercised even the slightest amount of diligence to obtain its "new evidence" prior to trial and entry of the judgment. It was Marine Bank's burden to show its entitlement to the relief requested, and it failed to meet that burden.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###